# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF MINNESOTA.

| | |
|---|---|
| 32 | 1 |
| 42 | 48 |
| 32 | 1 |
| 44 | 195 |
| 32 | 1 |
| 66 | 193 |
| 32 | 1 |
| 81 | 462 |
| 32 | 1 |
| 82 | 145 |
| 32 | 1 |
| 86 | 227 |

HOWARD TAYLOR SMITH *vs.* ST. PAUL CITY RAILWAY COMPANY.

### April 2, 1884.

**Street Railway Companies as Passenger Carriers—Rule as to Negligence.**—Street railway companies, as carriers of passengers for hire, are bound to exercise the highest degree of care and diligence consistent with the nature of their undertaking, and are responsible for the slightest neglect. This rule extends to the management of the cars and track, and to all the arrangements necessary for the safety of passengers as respects accidents from collision or otherwise.

**Same—Injury to Passenger—Presumption of Negligence.**—Where an injury occurs to a passenger through a defect in the construction or working or management of the vehicle, or anything pertaining to the service which the carrier ought to control, a presumption of negligence arises from the happening of the accident, and upon such proof the burden will devolve upon the defendant to exonerate himself by showing the existence of causes beyond his control, unless evidence thereof appears as part of plaintiff's own case.

**Same—What constitutes a Passenger.**—Upon the issue raised by the pleadings, whether plaintiff was a passenger at the time of the accident, *held*, that the jury were properly instructed that "if the plaintiff was not actually on the platform of the car, but had hailed the car, and the car had stopped for the purpose of enabling him to take passage, and he was in

v.32—1

the act of carefully and prudently attempting to step upon the platform, he is to be regarded as a passenger."

Practice—Experiments before the Jury out of Court.—It is not error for the trial court to refuse an application to allow the jury to witness experiments with cars upon a railway track outside the court-room, as bearing on the question of the practicability of an alleged collision.

Appeal by defendant from an order of the district court for Ramsey county, refusing a new trial, after a trial before *Wilkin*, J., and a jury, and a verdict of $3,000 for plaintiff.

*H. J. Horn*, for appellant.

*C. K. Davis*, for respondent.

VANDERBURGH, J.    This action is brought to recover damages for personal injuries alleged to have been caused by a collision between two street cars of the defendant, on one of which plaintiff claims to have been a passenger. Defendant denies that he was a passenger, and insists that under the circumstances it is liable for the exercise of ordinary care only.

1. Upon this question plaintiff's evidence tends to show that he had reached the car, which had stopped for him at a crossing, and was endeavoring to enter it by a single low step, in the rear and centre of the car, between the rails; that while he was on the step and in the act of opening the door, which opened with difficulty, he heard the noise of another car approaching, which was unexpectedly brought into collision with the one he was entering, and he was thereby struck, knocked down, and severely hurt. The defendant's evidence also tends to show that the forward car had stopped and was waiting for plaintiff, and that he had passed to the rear thereof and stood between the rails, where he was seen by the driver of the rear car before the accident. The court charged the jury that "if the plaintiff was not actually on the platform, but had hailed the car, and the car had stopped for the purpose of enabling him to take passage, and he was in the act of carefully and prudently attempting to step upon the platform, he is to be regarded as a passenger." This instruction was correct as a legal proposition, and also clearly within the evidence, which, taken together, is amply sufficient to support the finding that the plaintiff had accepted the defendant's invitation to take passage,

which had been signified by its stopping the car and waiting for him to enter it; that he was in the act of entering it, and had so far placed himself in the charge of the defendant as to be entitled to the protection of a passenger. The rule is not inflexible that to entitle a person to such protection he must be actually within the vehicle or upon some portion of it. Otherwise he might in good faith, and in the exercise of due care, place himself in a position of peril while in the act of taking passage, upon the consent and invitation of the carrier, and the latter be bound to the exercise of ordinary care only. *Brien* v. *Bennett*, 8 C. & P. 724; *Allender* v. *Chicago, etc., R. Co.*, 37 Iowa, 264; *Gordon* v. *Grand St. & N. R. Co.*, 40 Barb. 546; *Com.* v. *Boston & M. R. Co.*, 129 Mass. 501; Thompson's Carriers, 42; Hutchinson's Carriers, § 556; Shearman & Redf. on Negligence, § 262.

2. The defendant was a carrier of passengers for hire, owning and controlling the tracks and cars operated thereon. It is therefore subject to the rules applicable to passenger carriers. Thompson's Carriers, 442; *Barrett* v. *Third Ave. R. Co.*, 1 Sweeny, 568; 8 Abb. Pr. (N. S.) 205. As respects hazards and dangers incident to the business or employment, the law enjoins upon such carrier the highest degree of care consistent with its undertaking, and it is responsible for the slightest negligence. *Wilson* v. *Northern Pacific R. Co.*, 26 Minn. 278; *Warren* v. *Fitchburg R. Co.*, 8 Allen, 233; 43 Amer. Dec. 354, 356, notes and cases. This rule extends to the management of the cars and track, and to all the subsidiary arrangements necessary for the safety of passengers. *Simmons* v. *New Bedford, etc., R. Co.*, 97 Mass. 361, 368; *Meier* v. *Pennsylvania R. Co.*, 64 Pa. St. 225. It would, of course, also be applicable to the proper arrangements for running street cars upon the same track, in respect to risks and dangers of accidents from collision.

3. In support of the charge of negligence in the management of the rear car, (No. 26,) and the horses attached to it, plaintiff's evidence tended to prove that before he reached the forward car, (No. 8,) he saw car 26 approaching upon an up grade, about one-half block away, and moving at the usual rate of speed; that, while he was in the act of entering the car which stood waiting for him, hearing a noise on the track behind him, he looked around and saw the horses

of car No. 26 approaching rapidly, and immediately the collision occurred in which he was injured. The horses and car 26 were turned to the right and run off the track, and immediately stopped in the street along-side of car No. 8, which was also thrown off the track. Assuming the testimony of plaintiff and his witnesses to be true, it is evident that the forward car must have been struck either by the horses or some part of car No. 26, and that plaintiff was struck and injured thereby. We think it is also evident that the horses must have started into a gait much more rapid than usual in such service, or proper, considering the proximity of the forward car; but plaintiff's evidence, however, failed to explain this, and, though it included the testimony of passengers in car No. 26 at the time, it did not appear as a part of plaintiff's case that the horses had in fact become unmanageable, or were actually "running away." The collision occurred in the evening, and during a storm, but the streets were sufficiently lighted, so that the plaintiff and car No. 8 were discernible by the driver of car No. 26. No adequate or satisfactory cause, therefore, for the happening of the accident and injury to plaintiff, consistent with due diligence on the part of the defendant, is disclosed by plaintiff's case.

The severe rule which enjoins upon the carrier such extraordinary care and diligence, is intended, for reasons of public policy, to secure the safe carriage of passengers, in so far as human skill and foresight can effect such result. From the application of this strict rule to carriers it naturally follows that where an injury occurs to a passenger through a defect in the construction or working or management of the vehicle, or anything pertaining to the service which the carrier ought to control, a presumption of negligence arises. The general rule is thus stated in *Scott* v. *London Dock Co.*, 3 Hurl. & C. 596: "There must be reasonable evidence of negligence; but where the thing is shown to be under the management of defendant or his servants, and the accident is such as in the ordinary course of things does not happen, if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from want of care."

The rule is therefore frequently stated, in general terms, that neg-

ligence on the part of the carrier may be presumed from the mere happening of the accident. The reason of the rule seems to be that from the very nature of things the means of proving the specific facts are more in the power of the carrier. The latter, owning the property and controlling the agencies, is presumed to have peculiarly within his own knowledge the cause of an accident, which he might be interested to withhold, and which the passenger could not know and might himself be unable to prove. Thompson's Carriers, 211. The application of this rule is not limited to a breakage or defect in the vehicle in which the passenger is carried, but "extends to any other thing which the carrier can and ought to control, as a part of its duty to carry passengers safely." *Meier* v. *Pennsylvania R. Co., supra; Feital* v. *Middlesex R. Co.,* 109 Mass. 398. Hence the fact of a collision between cars belonging to the same company upon a railway track is considered *prima facie* evidence of negligence on the part of the company, and it is not necessary for the plaintiff to prove specifically in what it consisted. If it occurred without the fault of defendants, it is ordinarily for them to show it. *Skinner* v. *London, etc., Ry. Co.,* 5 Exch. 787; *Railroad Co.* v. *Pollard,* 22 Wall. 341; Angell on Carriers, (5th Ed.) § 789. Where, however, the plaintiff's own evidence shows the operation of causes beyond the control of the carrier, as the presence of *vis major* or the tortious act of a stranger, tending to produce the accident, the plaintiff, in order to make out a *prima facie* case, will generally be obliged to go further and prove the actual concurrence of the negligence of the defendant as an operating and efficient cause, or that by the exercise of due diligence the accident might have been avoided. Wharton on Negligence, § 661; Thompson's Carriers, 213; *Le Barron* v. *East Boston Ferry Co.,* 11 Allen, 312; *Gillespie* v. *St. Louis, etc., Ry. Co.,* 6 Mo. App. 554. The reason of the distinction is so plain that in practice it is not difficult to apply the correct rule.

In the case at bar, plaintiff's evidence did not tend to prove that the accident was attributable to extraordinary causes beyond defendant's control. The burden, therefore, devolved upon the defendant to exonerate itself from liability by showing that the collision was due to inevitable accident, or some cause for which it was not responsible.

*Skinner* v. *London, etc., Ry. Co., supra.* The motion to dismiss the action was properly denied, and the rule laid down by the court as to the burden of proof in such cases was correct.

4. The issues embracing the questions of plaintiff's contributory negligence, the circumstances of the accident, and the nature and extent of his injuries, were fairly submitted to the jury by the court, and must be presumed to have been found for plaintiff. And upon the question of contributory negligence the court properly instructed the jury that the plaintiff was bound to exercise ordinary prudence only, while the defendant's obligation involved the strict rule of liability imposed upon carriers. *Johnson* v. *Winona & St. Peter R. Co.,* 11 Minn. 204, (296.)

5. The court properly refused the defendant's fifth request, wherein the court was asked to charge the jury "that if they found that the injury complained of was caused by the running away of the horses attached to car No. 26, through fright, caused by the hail-storm, it would be necessary, in order to entitle plaintiff to a verdict, that he should prove by a fair preponderance of evidence that the defendant was negligent in the management of car No. 26 during the runaway, and that the injury complained of was occasioned by such negligence." We understand this to mean that, upon proof that the accident was occasioned as alleged, defendant was *prima facie* exonerated, and thereupon the burden was cast upon the plaintiff to prove specific negligent acts or omissions in the premises. Plaintiff had made a *prima facie* case, which disclosed evidence of the circumstances of the accident, and which defendant was called upon to rebut. Now the bare fact, if established by the defendant, that the collision was occasioned by the team running away through fright at a storm, or from any other cause, does not of itself, disconnected with the agencies controlled by defendant, imply that the accident was inevitable. *Sullivan* v. *Phila. & R. R. Co.,* 30 Pa. St. 234. It was not, therefore, alone sufficient to rebut the plaintiff's case, or to cast upon him the burden of proving specific negligence or mismanagement. *Karsen* v. *Mil. & St. Paul Ry. Co.,* 29 Minn. 12. The teams, cars, and their management belonged to the defendant. It was its duty to exercise the highest practical diligence and foresight as respects

the danger of accidents of this kind, and to run cars upon the same track at suitable distances apart, and also to employ skilful drivers and safe teams, and through its servants to exercise due care and skill in the management and control of the horses, in any emergency likely to arise in the service or business. Whether an accident resulting from the alleged cause may or may not have been consistent with the highest care and skill is to be determined by the evidence; but to constitute a defence it should so appear. So the court considered, and fairly left to the jury to determine, upon the evidence in the case, whether defendant exercised proper care under the circumstances to prevent the accident.

6. It was not error for the court to refuse the defendant's application to allow the jury to proceed to the car-house of defendant and witness experiments with these cars, as bearing upon the question of the nature of the alleged collision. The case was not within the provisions of the statute allowing a view by the jury, and, if such procedure were authorized or proper in any case, the question would be one resting in the discretion of the court. See *Stones* v. *Menhem*, 2 Exch. 382.

Order affirmed.